IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

CHARLES ANTHONY PASCHAL, JR.,      )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        CV 126-042
                                   )
WARDEN DESHAWN JONES and           )
JOHN DOES, Georgia Department      )
of Correction Organization,        )
                                   )
        Defendants.[1]             )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, incarcerated at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983.  Because he is proceeding IFP, Plaintiff's pleadings must be screened to protect potential defendants.  Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.      **Screening the Amended Complaint**

    A.      **Background**

Plaintiff originally filed this case in the Middle District of Georgia, but because the events about which Plaintiff complains occurred at ASMP, United States District Judge Marc T. Treadwell transferred the case to the Southern District of Georgia.  (See doc. nos. 1, 4.)  On

---

[1]The Court **DIRECTS** the **CLERK** to update the list of Defendants on the docket with the "John Does" designation listed above, which is consistent with the amended complaint at docket entry 21.

April 28, 2026, the Court directed Plaintiff to file an amended complaint after explaining Plaintiff had failed to name as a Defendant any ASMP correctional or disciplinary officer who allegedly assaulted him, put him the "hole," and found him guilty of disciplinary charges without allowing him to appear at Disciplinary Report Court.  (See doc. no. 18.)  The Court notified Plaintiff that if he wanted to proceed, he must file an amended complaint on the form provided within fourteen days and specifically stated, "The amended complaint should name as defendants the prison officials who allegedly violated Plaintiff's rights . . . and should describe in detail the specific acts or omissions by each defendant that caused or contributed to the violations."  (Id. at 3.)  The Court also cautioned, "Plaintiff shall submit only one amended complaint in accordance with the terms of this Order."  (Id. at 4.)

On May 26, 2026, the Clerk of Court docketed Plaintiff's First Amended Complaint, which Plaintiff signed on May 6, 2026.  (Doc. no. 21, p. 11.)  There is no explanation for the delay between Plaintiff's signature date and the date of arrival to the Clerk of Court, but giving Plaintiff the benefit of the "mailbox rule," the form complaint was timely submitted.  See Houston v. Lack, 487 U.S. 266, 275-76 (1988).  On June 2, 2026, the Clerk filed a Second Amended Complaint, which Plaintiff signed on May 21, 2026, but which was not submitted on the standard complaint form provided by the Clerk of Court.  (See doc. no. 22.)  This Second Amended Complaint fails to comply with the Court's April 28th Order not only because it is untimely and does not provide the standard information required by the form complaint used by incarcerated litigants in the Southern District of Georgia, but also because the Court cautioned Plaintiff he may only submit one amended complaint in response to the Court's April 28th Order.

Moreover, in the Second Amended Complaint, Plaintiff names as Defendants "All Individuals that can be sued in their individual and official capacities."  (Id. at 1.)  Such a

2

designation obviously fails to comply with the pleading requirements of both the Federal Rules of Civil Procedure and case law requiring allegations associating a particular defendant with a purported constitutional violation. See West v. Atkins, 487 U.S. 42, 48 (1988) (requiring in a § 1983 case an allegation of the violation of a right secured by the Constitution or laws of the United States by a person acting under color of state law); Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."); see also Fed. R. Civ. P. 8(a) (requiring a complaint to proffer a short and plain statement (1) detailing the Court's jurisdiction, (2) showing that a plaintiff is entitled to relief, and (3) demanding judgment for the relief that he seeks). As the Second Amended Complaint is violative of the Court's April 28th Order to submit only one amended complaint within fourteen days, and in light of the pleading deficiency identified herein regarding the failure to connect a specific defendant to a purported constitutional violation, the Court will not consider the Second Amended Complaint in determining whether Plaintiff states a viable claim for relief.

Not done yet, Plaintiff submitted a motion for leave to file an amended complaint adding parties. (See doc. no. 24.) Plaintiff's motion references the original complaint with its singular Defendant, Deshawn Jones, and states Plaintiff has determined the names of "more than Warden Deshawn Jones" that should be named as Defendants. (Id. at 1.) The motion is dated May 26, 2026, and fails to disclose any names of additional Defendants or offer any information about what these additional, unidentified Defendants allegedly did to violate Plaintiff's rights.

In sum, Plaintiff has made only one timely submission, on the appropriate complaint form, in response to the Court's April 28, 2026 Order – the First Amendment Complaint dated

3

May 6, 2026.  (Doc. no. 21.)  As the Court has already provided Plaintiff with an opportunity to amend his complaint to name specific Defendants and describe how they allegedly violated his rights, and because the motion to amend is violative of the April 28th Order and provides no information about the substance of any proposed amendment, the Court **REPORTS** and **RECOMMENDS** the motion, (doc. no. 24), be **DENIED**.  See Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla., 48 F.4th 1222, 1236 (11th Cir. 2022) (citing circuit precedent requiring plaintiff wishing to amend to file motion for leave to amend and either provide substance of proposed amendment or attach proposed amended pleading); see also Equity Lifestyle Props., Inc. v. Florida Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1241 (11th Cir. 2009) ("A district court need not tolerate defiance of reasonable orders." (citation omitted)).  Thus, the Court turns its attention to screening the First Amended Complaint ("FAC").

The FAC lists ASMP Warden Deshawn Jones as a Defendant in the caption but then lists only a question mark over the designation of the job or title of a Defendant as "Georgia Department of Correction Organization" in the portion of the complaint form reserved for listing Defendants.  (Doc. no. 21, pp. 1, 2.)  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On March 7, 2025, Plaintiff was given a direct order to proceed from the gym without an escort to the medical department.  (Id. at 4.)  Plaintiff was assaulted by unknown CERT officers during his journey.  (Id. at 4-5.)  Plaintiff fought back to protect himself but ended up on the ground, on the receiving end of repeated kicks to his face from the officers' boots.  (Id. at 5.)  Plaintiff sustained two black eyes, and although x-rays were taken after the assault, Plaintiff does not believe the Tylenol he received was sufficient treatment.  (Id.)  Although Plaintiff states without elaboration that he is claiming a violation of "due process protections,"

(id. at 3), there is no mention of what due process was allegedly denied to Plaintiff in the statement of claim or portion of the complaint form reserved for describing Plaintiff's injuries. (Id. at 4-5.) Despite the lack of any factual detail related to a due process claim, Plaintiff seeks relief in the form of monetary compensation for the pain and suffering from the alleged assault and reinstatement of his "T.P.M." because he was not "taken to Disciplinary Report Court."[2] (Id. at 5.)

As to pursuing administrative remedies, Plaintiff states he filed a grievance stating his "rights were violated by me being wrongfully assaulted, and then found guilty of such charges without being taken to DR Court!!" (Id. at 7.) Plaintiff states his grievance was denied as untimely, but it "was filed as soon as I became aware of my rights violations!" (Id.) As to appealing the denial of his grievance, Plaintiff states, "I tried speaking with administration to resolve such issue but none care from it being me not them!!" (Id.) Plaintiff does not state he filed any appeal beyond ASMP. (Id.)

### B.    Discussion

#### 1.    Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the

---

[2]There is no information about a current, prior, or extended T.P.M. date, presumably a "tentative parole month," let alone any information about what may or may have not occurred in any disciplinary proceedings related to the March 7th altercation that allegedly impacted Plaintiff's T.P.M. date. (See generally doc. no. 21.)

same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the amended complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2.     Plaintiff Fails to State a Claim for Relief Against Defendant Jones

First, Plaintiff fails to mention Defendant Jones in his statement of claim, or anywhere else in the FAC beyond the caption and the portion of the complaint form reserved for listing the names of defendants.[3]   The Eleventh Circuit has held that a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").

Second, Plaintiff cannot hold Defendant Jones liable by virtue of his supervisory position.  "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."   Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Florida Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

---

[3]It is not entirely clear Plaintiff intended to name Defendant Jones as a Defendant in the FAC, as it appears the Clerk of Court may have mistakenly filled in the caption based on the original complaint.  (See doc. no. 21, p. 1.)  Nonetheless, in an abundance of caution, the Court will explain why there is no claim stated against the warden.

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Warden Jones liable, Plaintiff must demonstrate that he (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff appears to name Warden Jones as a Defendant not because of his direct involvement in the events about which he complains, but by virtue of his supervisory position. Nowhere does Plaintiff allege Warden Jones was present for, or participated in, the alleged assault or subsequent disciplinary proceedings. Indeed, he never mentions Warden Jones in the substantive portion of his complaint.

Therefore, Plaintiff must allege a causal connection between Defendant Jones and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906

8

F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). There is no mention in the complaint of any history of widespread abuse, let alone any custom or policy, regarding unprovoked assaults by correctional officers or improper disciplinary proceedings. Nor is there any suggestion Warden Jones directed any prison employees to attack Plaintiff or conduct improper disciplinary proceedings.

In sum, Plaintiff fails to state a claim upon which relief can be granted against Defendant Jones.

### 3. No Fictitious Party Pleading

Plaintiff lists only a question mark over the designation of the job or title of a Defendant as "Georgia Department of Correction Organization" in the portion of the complaint form reserved for listing Defendants. (Doc. no. 21, pp. 1, 2.) Nor does the statement of claim identify anyone involved in the alleged assault other than an "unknown GDC employee" and "unknown" CERT officers. (Id. at 4, 5.) Likewise, Plaintiff provided no details about any due process claim, and he does not name any action on non-action taken by an identifiable individual with respect to his disciplinary charges or the manner in which any disciplinary hearing was, or was not, conducted.

Generally, "fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (*per curiam*) (citation omitted). An exception exists, "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" Id. (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992)). In

<u>Richardson</u>, the Eleventh Circuit Court of Appeals found merely describing a John Doe defendant as a correctional officer "was insufficient to identify the defendant among the many guards employed [at the facility.]"  <u>Id.</u>  Here, Plaintiff has similarly identified the unknown defendants only as employees or CERT officers at ASMP.   (Doc. no. 21, pp. 4, 5.)  This description is insufficient to enable the employees and/or officers to be identified from among the many other persons who work at ASMP.  Thus, Plaintiff fails to state a claim upon which relief can be granted against any identifiable individual, and the Court must recommend dismissal of any claims against the "John Does" Defendants.

### 4.   Plaintiff Also Fails to State a Claim Upon Which Relief Can Be Granted Because He Did Not Exhaust Administrative Remedies

Even if Plaintiff had named an identifiable Defendant and otherwise provided sufficient factual detail about the manner in which his rights were allegedly violated, he fails to state a claim upon which relief can be granted because the face of the FAC shows he did not exhaust administrative remedies.

### a.   The Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies.  See <u>Jones v. Bock</u>, 549 U.S. 199, 215 (2007); <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); <u>Solliday v. Fed. Officers</u>, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); <u>Anderson v. Donald</u>, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*).  The PLRA's mandatory exhaustion

10

requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002).

Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159; see also McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) ("The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." (citation omitted)).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at

11

1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter, 534 U.S. at 524.

### b.       Administrative Grievance Procedure

Inmates like Plaintiff under the supervision of the Georgia Department of Corrections ("DOC") are subject to the Statewide Grievance procedure governed by the version of the DOC Standard Operating Procedure that resulted in the promulgation of Policy Number ("PN") 227.02, which became effective May 10, 2019.[4]  The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal.  PN 227.02 § IV(C).  The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor.  Id. § IV(C)(1)(c) & (d).  The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id. § IV(C)(1)(b).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  Id.  The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it.  Id. § IV(C)(1)(e)(i).  The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident.  Id.  § IV(C)(1)(e)(ii).

---

[4]The    DOC    policy    cited    herein    is    publicly    available.    See https://public.powerdms.com/GADOC/documents/105711 (last visited June 17, 2026).

12

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted.  Id. § IV(C)(1)(f)(v).  If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal.  Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2).  The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause.  Id. § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal.  Id. § IV(C)(2)(e).  If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  Id. § (C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal.  Id.

### c.    Plaintiff's Failure to Exhaust

In his FAC, Plaintiff states he filed a grievance at ASMP claiming his rights were violated because he was "wrongfully assaulted, and then found guilty on such charges without being taken to DR Court!!"  (Doc. no. 21, p. 7.)  Plaintiff acknowledges the grievance was denied as untimely, though he disputes the timeliness analysis.  (Id.)  However, Plaintiff concedes he did not file an appeal beyond ASMP to the central office; he states only that he "tried speaking with Administration to resolve such issue."  (Id.)  According to the SOP, however, after the warden denied the grievance at the institutional level,  Plaintiff had seven days to file an appeal to the central office.  SOP 227.09, § IV(C)(1)(e)(v) & (c)(1)(f)(viii);

13

§ IV(C)(2). Thus, the face of Plaintiff's FAC makes clear he did not complete the two-step grievance process prior to filing his federal lawsuit because he did not file an appeal. That is, Plaintiff improperly bypassed the appeals process when he chose not to file a central office appeal after the warden denied the grievance as untimely.

Allowing Plaintiff to decide for himself to bypass the grievance process defeats the rationale behind requiring "proper exhaustion":

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (*per curiam*) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed in federal court despite his decision to short-circuit the grievance process by not filing an appeal would defeat the aims of the PLRA to review the merits of a prisoner's claim(s), and would not promote "the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy."

14

Johnson, 418 F.3d at 1159.  The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances.  Id.  Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit.  Higginbottom, 223 F.3d at 1261.  It is plain from the face of Plaintiff's FAC, indeed he concedes, that he failed to complete the entire grievance process prior to commencing this case because he did not file a central office appeal once the warden denied the original grievance as untimely.

For the sake of completeness, the Court also notes there is a separate procedure for challenging disciplinary proceedings, SOP 209.01.[5]  That process for challenging disciplinary proceedings also includes a procedure for appealing beyond the institution to the Inmate Affairs Unit.  SOP 209.01, § IV(D)(1)(e), (DD) & Attach. 7.  Thus, regardless of whether Plaintiff is referring to SOP 209.01 or SOP 227.02 when discussing whether he filed a grievance, the failure to pursue a written appeal beyond ASMP means Plaintiff did not exhaust available administrative remedies.

In sum, Plaintiff did not properly exhaust his available administrative remedies, and therefore, the FAC fails to state a claim upon which relief can be granted.  See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative

---

[5]The DOC policy cited herein is publicly available.  See https://public.powerdms.com/GADOC/documents/105928 (last visited June 17, 2026).

remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted).

## II. Conclusion

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motion to amend be **DENIED**, (doc. no. 24), the case be **DISMISSED** failure to state a claim upon which relief can be granted, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 17th day of June, 2026, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA